CITY OF ST. LOUIS, Respondent, v. SCHULENBURG & BOECK-
ELER LUMBER COMPANY, Appellant.

November 28, 1882.

1. MUNICIPAL CORPORATIONS — WHARFAGE. — The right of a municipal cor-
poration owning a wharf to charge and collect wharfage is a right of
property, and not a right of sovereignty.

2. —— A municipal corporation cannot collect wharfage for goods landed
beyond its wharf in times of high water.

APPEAL from the St. Louis Court of Criminal Correction,
CADY, J.

*Reversed and dismissed.*

RUDOLPH SCHULENBURG and G. M. STEWART, for the
appellant: The right to collect wharfage is a property
right. — *Packet Co.* v. *Keokuk*, 95 U. S. 85. The right is
not one of sovereignty. — *St. Louis* v. *Sternberg*, 69 Mo.
289 ; *City* v. *Green*, 70 Mo. 562.

LEVERETT BELL, for the respondent, cited : *Packet Co.*
v. *St. Louis*, 100 U. S. 423.

THOMPSON, J., delivered the opinion of the court.

This is an action commenced in the police court of the city
of St. Louis, by the city against the Schulenburg & Boeck-
eler Lumber Company, and A. Boeckeler, the president
thereof, for an alleged violation of sections 6 and 19 of an
ordinance of the city numbered 11,668, the same being
Article I. of chapter 13 of the present Revised Ordinances
of the city of St. Louis. The police justice gave judg-
ment for the plaintiff; the defendants appealed to the court
of criminal correction ; the cause was tried anew in that
court, and judgment was again given for the city in the sum
of $117.83. The ordinance under which the proceeding
was instituted relates to wharfage dues, and the sections in
question are as follows : " Sect. 6. The following amounts
shall be collected for wharfage on the articles hereinafter

designated when brought to the public wharf or landing by raft: On boards, planks, scantling, or joists and dimension timber, ten cents per thousand feet, board measure; on shingles and lath, three cents per thousand; on paling in bundles, ten cents per thousand; on hoop-poles, clapboards, staves, and all descriptions of coopers' and wagonmakers' stuff, and all similar material, loose or in bundles, ten cents per one thousand cubic feet; on cedar and other posts, and all descriptions of rough lumber or timber not otherwise rated, ten cents per one hundred cubic feet; on logs in rafts, two and one-half cents per one hundred superficial feet of raft.'' Sect. 19. ''Every owner or person in charge of any boat, fire-wood, lumber, timber, logs, or other articles on which wharfage or license is due, who shall, after demand has been made, fail or refuse to pay the same, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in a sum double the amount of wharfage or license so due and owing. The payment of said fines and costs shall operate as a discharge in full of said demands.''

We have been strongly urged to consider the question of the constitutionality of section 19 of this ordinance. It is contended that it authorizes an imprisonment for debt, and that it violates the principle of equal taxation declared by the constitution. After looking carefully through this record, we are of opinion that this case does not call for the decision of these grave questions.

At the close of the plaintiff's case, the defendants' counsel moved for the discharge of the defendants on the evidence, for the reason, among others, that the lumber on account of which the city claims wharfage, was not landed upon the wharf of the city, there being no wharf at the spot where it was landed. This motion the court overruled, and the defendants excepted.

The evidence adduced for the plaintiff shows, as we understand it, that the raft of lumber for which these dues

are claimed was towed to the city by the defendant corporation, on the 8th of May, 1881, during the great flood which existed at that time ; that the entire wharf of the city in the vicinity where this lumber was landed was so far under water that the raft was towed entirely over it and moored upon ground which did not belong to the city, at Kennett Street, between Harrison and Palm Streets, about eight hundred or one thousand feet west of the city's improved wharf; that the work of " pulling," as lumbermen call it, that is, getting the lumber out of the water, immediately began at Kennett Street ; that as the water subsided, the lumber was " pulled " at different places, wherever dry land could be found ; that no portion of the raft ever settled upon or against, or was tied to, any portion of the city's improved wharf, though in getting out the last of the lumber which remained in the water, a small portion of it was piled upon that portion of the wharf which was improved.

In order to understand the full effect of this testimony, it is necessary to state that there is in that vicinity a slough which is separated from the river by a narrow ridge of ground.    The eastern slope of this ridge, extending to and into the water of the river, has been paved and otherwise improved, and prepared by the city for use as a wharf. The western slope, extending from the crown of this ridge down to and into the waters of the slough, is claimed and appears to be held by the city as a portion of the general strip of land along its river front, set apart and reserved for use as a public wharf.    This western slope, at the time when this raft was landed and " pulled," was a mere mud bank. It was admitted at the trial that one-half of the lumber mentioned in the city attorney's statement, settled upon this mud bank, and was there got out and hauled away.

Upon this testimony, and it is the testimony of the plaintiff's witnesses, it seems clear to us that the city has not shown a right to charge wharfage dues upon this entire raft of lumber, though we should be disposed to concede that

it could have charged and collected wharfage upon that portion of the lumber which was, in fact, piled upon its improved wharf, if the quantity of lumber there piled had been measured or otherwise ascertained at the time.   But because it might have exercised its right to charge and collect wharfage upon this small portion of the raft, the quantity of which is not shown by any evidence in the bill of exceptions, it does not at all follow that it can enforce a demand for wharfage in respect of the entire raft, including a portion which was landed upon defendant's own property and taken out while yet the plaintiff's wharf was entirely under water.   If a private wharfinger were to assert such a right, his claim would be considered preposterous by every one.   And yet the rights of a municipal corporation in respect of its wharves more nearly resemble proprietary rights, than they resemble sovereign rights.

" Providing a wharf," says Mr. Justice Strong, " to which vessels may make fast, or at which they may conveniently load or unload, is rendering them a service.   The character of the service is the same whether the wharf is built and offered for use by the state, a municipal corporation, or a private individual; and when compensation is demanded for the use of the wharf, the demand is an assertion, not of sovereignty, but of a right of property.   A passing vessel may use the wharf or not at its election, and thus may incur a liability for wharfage or not, at the choice of the master or owner." *Packet Co.* v. *Keokuk*, 95 U. S. 80, 85.   Other decisions of the same tribunal confirm this view and show that wharfage dues are regarded in law, not as a tax levied upon commerce for the support of the municipal government, but as compensation for the use by water craft of the property of the city; and it has therefore been held that a state law or a municipal ordinance, levying a tonnage-tax upon all vessels coming within the harbor of the city, but a small portion of whose water-line was improved

as a wharf, and irrespective of whether they landed at an improved wharf or not, was not valid as imposing compensation for wharfage service, but was void as a duty of tonnage, and as an interference with interstate and foreign commerce. *Cannon* v. *New Orleans*, 20 Wall. 577. In a decision by the same tribunal, which involved the construction of the very ordinance we are now considering, Mr. Justice Harlan, carrying out the same view, used the following language : "The sums paid by the plaintiff in error were exacted and paid as compensation for the use of the improved wharf, and not for the mere privilege of entering and stopping at the port of Saint Louis, or for landing at the shore in its natural condition where there were no conveniences which could be called a wharf." *Packet Co.* v. *St. Louis*, 100 U. S. 423, 429. The same views are embodied in earlier decisions of the same court. *Steamship Co.* v. *Port Wardens*, 6 Wall. 31 ; *Tonnage Tax Cases*, 12 Wall. 204 ; *Cooley* v. *Port Wardens*, 12 How. 299. These cases make it clear that the only ground upon which the power of a municipal corporation to exact what are termed wharfage dues can be upheld, is that the corporation furnishes an improved wharf for the convenience of vessels and rafts, and that the masters or owners of such vessels or rafts elect to use such improved wharf, and do in fact use it in discharging their cargoes, or in landing and getting out of the water their rafts. This, and this only, is what we must reasonably suppose to have been in the contemplation of the framers of the ordinance in question. But, except as to the small fragment of this raft which was landed upon the improved portion of the city's wharf, this is not what the city is suing for in the present case. To paraphrase the language of Mr. Justice Harlan above quoted, — with this exception, it is not here exacting compensation of the defendants for the use of an improved wharf, but for landing their raft at a shore in its natural condition, where there were no con-

veniences which could be called a wharf, — and we may add, as to a large portion of the raft, upon land which did not belong to the city at all. This cannot be done.

As the city has made out no bill, in conformity with the provisions of those sections of the ordinance which prescribe the manner of collecting wharfage dues, for wharfage in respect of the small portion of this raft which was piled on their improved wharf, they cannot recover a penalty for the non-payment of wharfage upon such portion in this proceeding. The judgment is accordingly reversed and the proceeding dismissed. All the judges concur.